UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

**CIVIL ACTION NO. 08-283-JBC**

**IN RE:**

**LODESTAR ENERGY, INC.; LODESTAR HOLDINGS, INC.; INDUSTRIAL FUELS MINERAL CO.,**

 **Debtors**

**TENNESSEE VALLEY AUTHORITY,**             **APPELLANT,**

**V.**       **MEMORANDUM OPINION AND ORDER**

**WILLIAM D. BISHOP; LC ACQUISITION CO., LLC,**             **APPELLEES.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on appellant Tennessee Valley Authority's motion for leave to appeal the Bankruptcy Court's denial of its motion for partial summary judgment pursuant to 28 U.S.C. § 158 (DE 5). The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**I. Background**

On March 30, 2001, creditors of Lodestar Energy, Inc. and related entities (collectively "Lodestar") filed involuntary bankruptcy petitions against Lodestar and, on April 26, 2001, Lodestar consented to a voluntary Chapter 11 proceeding. At the time, Lodestar and appellant Tennessee Valley Authority ("TVA") had contracts

1

that expired June 30, 2003, for the delivery of large amounts of coal from Lodestar to TVA.  During this Chapter 11 proceeding, these contracts were altered, the new contract supplements were finalized in October 2001, and the Bankruptcy Court approved the new contract supplements in December 2001.  In these new contract supplements, Lodestar agreed to deliver, and TVA agreed to accept, approximately 200,000 tons of coal per month at an increased price.  Lodestar and its creditors failed to agree on a reorganization under Chapter 11 and, consequently, Lodestar's assets were offered for sale in December 2002.

In January 2003, TVA experienced a breakdown of its Colbert Unit 5 due to major damage to its boiler tubes.  Whether this breakdown was a result of human error is contested by the parties in the Bankruptcy Court proceedings.  On February 3, 2003, TVA declared a *force majeure* and demanded a reduction of 25,000 tons per week in the coal shipments from Lodestar.  Lodestar contends that the *force majeure* was improper under the contract governing the shipments because the breakdown was due to TVA's negligence.  This reduction lasted eight weeks and the total amount of coal at issue amounted to approximately 200,000 tons.

To no avail, Lodestar invoked the contract in making requests that TVA direct the tonnage at issue to a different plant in the TVA system.  As a result, Lodestar ultimately sold the coal to an existing customer at $6 per ton below the contract price.  Lodestar simultaneously entered "deficient" status with Congress Financial Corporation ("Congress Financial"), its primary debtor-in-possession

2

lender, despite an additional $1 million advanced to Lodestar by Congress Financial during this period. According to appellees Trustee William D. Bishop and LS Acquistion Co. LLC, the loss of access to this loan facility prevented Lodestar from completing a project aimed at accessing significant amounts of additional coal in one of its mines, forcing Lodestar to abandon the development of the nearly completed project.

The mine on which Lodestar had to suspend improvements was closed in April 2003, and the plaintiffs-appellees claimed consequential damages against TVA for wrongly declaring a *force majeure*. In ruling on the defendant-appellant's motion for partial summary judgment,[1] the Bankruptcy Court found that issues of fact exist that could support an award of consequential damages against TVA. TVA argued in its motion, and again in a motion for reconsideration, that the Uniform Commercial Code precludes recovery of consequential damages by a seller. The appellees have claimed $8-9 million in consequential damages in addition to the $1.24 million in cover damages for the loss of coal sales during the *force majeure* period. TVA seeks leave to appeal from the Bankruptcy Court's rejection of its

---

[1] The Bankruptcy Court in ruling on this motion also refused to rule that the contract did not allow Lodestar a damages remedy because there is a dispute as to whether the breakdown resulted from human error, a finding that might establish that the contractual provision fails at its "essential purpose." Therefore, the Bankruptcy Court found that it could not determine whether the exclusion of consequential damages was unconscionable. TVA does not seek to appeal this ruling. In fact, the ruling it is challenging deals with an argument in its motion for partial summary judgment in which the TVA assumed the limitation-of-remedies provision did not exist.

3

argument in its motion for partial summary judgment and its motion to reconsider. Specifically, the TVA requests that the court consider this question: "Whether the Plaintiffs, as sellers, are precluded as a matter of law from recovering alleged consequential damages associated with Congress Financial's decision to shut down Lodestar's West Kentucky operations."  DE 5, at 5.

The parties filed with the Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") a written statement of election to have this appeal heard by the district court.  This statement was timely filed, and the BAP transferred this matter to the court.

## II.     Legal Standard

Before this court will hear an appeal from an interlocutory order of the Bankruptcy Court, the appellant must first obtain leave to appeal.  28 U.S.C. § 158(a)(3).  The standard for taking appeals from the Bankruptcy Court is the same as the standard for the courts of appeals taking appeals from the district courts, which is governed by 28 U.S.C. § 1292(b).  *See* 28 U.S.C. § 158(c)(2).  Under § 1292(b), an interlocutory order is appealable if (1) it involves a controlling question of law, (2) there is substantial ground for difference of opinion regarding whether the order was decided correctly, and (3) an immediate appeal would materially advance the ultimate termination of the litigation.  *See Wicheff v. Baumgart*, 215 B.R. 839, 844 (B.A.P. 6th Cir. 1998).  "Review under § 1292(b) should be sparingly granted and then only in exceptional cases." *Id.*

### III. Analysis

#### A. Whether a Controlling Issue of Law Is Involved

"An issue of law is controlling if its incorrect disposition amounts to reversible error on appeal. However, a growing number of decisions [have] accepted the rule that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." *In re Big Rivers Elec. Corp.*, 266 B.R. 100, 104 (W.D. Ky. 2000). TVA asserts that it has presented a controlling issue of law because a decision in its favor would result in reversal of an award of consequential damages to defendants-appellees and a decision in its favor at this point in the litigation would save time for the court and time and expense for the litigants. The appellees respond that this issue reduces to a factual determination of whether the contract's remedy of rescheduling delivery of rejected coal is unconscionable.

Even if the Bankruptcy Court finds that the limitation-of-remedies provision in the contract at issue is unconscionable,[2] the question of whether the default rule under the Uniform Commerical Code precludes consequential damages is not a factual determination. As was the case in *Big Rivers*, "[i]t is very likely that the final ruling of the bankruptcy court on this issue will be appealed," "[t]he Court simply would delay the inevitable by refusing to grant leave," and "[d]eciding this

---

[2] This issue is laid out more fully below in the section discussing whether there is substantial ground for difference of opinion.

5

issue now could avoid future time and expense" in developing and litigating the factual issues related to consequential damages. 266 B.R. at 105. Therefore, the court finds that TVA is seeking to appeal a "controlling issue of law."

### B.     Whether There Is Substantial Ground for Difference of Opinion

The Bankruptcy Court held that, because of the present unavailability of the sole remedy provided by the contract, rescheduling delivery of the coal, the "contract provides no remedy." DE 2-3, at 5, 8. While the Bankruptcy Court found that the Uniform Commercial Code governs the contract as a sales contract, it also cited KRS 355.2-719(2)-(3) for the respective propositions that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter" and that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." DE 2-3, at 5, 8. Because there is a question of material fact as to "whether the breakdown was a result of human error," the Bankruptcy Court found that it was prevented from deciding whether the contractual provision limiting remedies "fails of its essential purpose, and prevents the Court from deciding whether the exclusion of consequential damages is unconscionable." DE 2-3, at 5, 8.

Consequential damages, however, are generally not available to a seller under Sixth Circuit precedent construing the Uniform Commerical Code. *See Stamtec, Inc. v. Anson Stamping Co.*, 346 F.3d 651, 658 (6th Cir. 2003); *Firwood Mfg. Co., Inc. v. General Tire, Inc.*, 96 F.3d 163, 166 (6th Cir. 1996). TVA argues that

the court should look to the commentary to Tennessee's version of KRS 355.2-719(3), which provides that a "clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed." Tenn. Code Ann. § 47-2-719 cmt. 1. Therefore, according to TVA, even if the limitation-of-remedies provision were unconscionable, the defendants-appellees would be limited to remedies available under the Uniform Commerical Code, which do not include consequential damages for a seller such as Lodestar.

TVA's argument indicates there is substantial ground for a difference of opinion with the rulings of the Bankruptcy Court. A sales contract is typically governed by the Uniform Commercial Code, which generally does not allow consequential damages to a seller. Courts may look to the common law "only to the extent it supplement[s] the definition of incidental damages found in [the Uniform Commerical Code] . . . it cannot 'supplement' the types of damages available to sellers." *Firwood*, 96 F.3d at 172 (addressing Michigan's version of § 2-710). While "'[d]istrict courts have not been bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression,'" *State of North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D. N.C. 1995) (quoting 16 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3930 (1977)), the court finds that there is substantial ground for a

difference of opinion with the Bankruptcy Court on this issue.

### C. Whether an Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation

In *Big Rivers*, the district court found that deciding the issues presented by the proposed appeal "may bring about a final resolution to Big Rivers' Chapter 11 bankruptcy" because it pertained to "[t]he only isues pending before the bankruptcy court" of which the district court was aware. 266 B.R. at 105. Here, however, the issue of consequential damages is not the only issue pending before the Bankruptcy Court. The Bankruptcy Court will also decide whether the breakdown of the boiler tubes in Colbert Unit 5 resulted from human error, which, in turn, will decide whether TVA was justified in declaring a *force majeure*. Appellees presented three causes of action in their amended complaint: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) improper withholding. The entitlement to consequential damages is but one issue to be considered if the plaintiffs-appellees succeed on one or more of their claims at trial. Therefore, the court finds that it would be more appropriate for the parties to proceed to trial and then, if a dispute still exists, appeal the discrete issue of the entitlement to consequential damages after the other issues have been resolved at trial.

TVA contends that "[i]f Plaintiffs' allegations of consequential damages go forward, additional extended and expensive discovery will be required, and TVA will need to submit an extensive additional expert report." DE 5, at 11. The court

finds that these considerations do not establish that hearing TVA's appeal now would be more expedient than trying all of the issues in this case as quickly as possible. Consequently, and keeping in mind that "[r]eview under § 1292(b) should be sparingly granted and then only in exceptional cases," *Wicheff*, 215 B.R. at 844, the court concludes that an immediate appeal of the issue presented by TVA would not materially advance the ultimate termination of the litigation.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that plaintiff-appellant TVA's motion for leave to appeal (DE 5) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to United States Bankruptcy Court for the Eastern District of Kentucky.

This matter shall be **STRICKEN** from the active docket.

Signed on August 26, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY